| | |
|---|---|
| ALBERT PATTERSON d/b/a WORLD WRESTLING ASSOCIATION, SUPERSTARS OF WRESTLING, INC. and d/b/a W.W.A. SUPERSTARS | |
| Plaintiff | No. 03 C 0374 |
| v. | JUDGE RHANDA |
| WORLD WRESTLING ENTERTAINMENT, INC and GOOD HUMOR CORPORATION, d/b/a Good Humor Breyers Ice Cream Defendants | JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS OR IN THE ALTERNATIVE, MOTION TO COMPEL

Plaintiff hereby responds to Defendants' Motion for Sanctions or in the alternative Motion to Compel. Plaintiff made himself available for his deposition for two complete days. The deposition on the first day started about 9:30 a.m. with a one hour break for lunch and continued until 5:40 p.m. The next day started at about 9:30 a.m. with a one hour break for lunch and adjourned at 3:09 p.m. as agreed as a condition of scheduling the deposition that day.

### PATTERSON ANSWERED QUESTIONS REGARDING THE COUNTERCLAIMS

Patterson opposes a continuance of the deposition because of the abuse by defendants' counsel of Mr. Patterson and the waste of deposition time by defendants. Defendants claim that Patterson "categorically" refused to answer questions regarding the counterclaims is false. After choosing to allocate more than eleven of the twelve hours of deposition time to the plaintiff's claims against them, Krasik claims he started asking questions relating to the counter claims beginning with Exhibit 53 at page 434. With respect to Exhibit 53 which was dated February 13, 1995, Patterson admitted signing the letter. As the statute of limitation regarding this letter has

1

long run, this letter could not have been the basis for the filing of any counterclaim.

With respect to Exhibit 54, Patterson authenticated the document and admitted sending the document to WWF and its counsel on or about January 1, 1996. Patterson went on to testify that he was complaining to defendant WWE that Vince McMahon was in a ring with Superstars Wrestling that appeared on television. D Ex 1, page 444, lines 2-24. Patterson testified that he did not file the complaint mentioned in the letter, but filed a petition to cancel WWF SUPERSTARS with the US Patent and Trademark Office instead. Patterson answered all questions relating to Exhibit 54.

Patterson answered all questions relating to Exhibit 55. D Ex 1, p 446 l 19 - p 448, line 1. In answering all questions regarding Exhibit 56, Patterson testified that he did not recognize the handwriting, that he did not recall sending the letter and that he did not know to whom the letter was sent. Krasik, under the guise of trying to refresh Patterson's recollection, went through Exhibit 56 which Patterson had already read and continued to ask the same questions which Patterson had already answered. Patterson repeatedly testified that reading parts of the letter did not refresh his recollection, that he did not recognize the handwriting, did not recall the letter, and did not know to whom the letter was sent. The testimony is clear that Patterson had no foundation to testify regarding Exhibit 56. Eventually, Patterson objected to being asked the same questions over and over. Krasik was badgering Mr. Patterson in an unprofessional manner and wasting the available deposition time. D Ex 1, p 448 line 2 through page 451 line 17.

Patterson authenticated Exhibit 57, the letter sent to Good Humor on December 28, 2001. When asked, Patterson explained, "My purpose was World Wrestling Federation Superstars of Wrestling registered trademark being used on the ice cream bar." In response to a second

2

question regarding the intent of the letter, Patterson went on to testify that, "This letter was to notify Good Humor that the World Wrestling Superstars of Wrestling was on a box that had a registration on the box, and the registration was not registered with the Patent and Trademark Office and that there was no copy of an application of World Wrestling Superstars." D Ex 1, p 452 lines 4-20. At this point defendants' counsel erupts into an argument as to what Patterson's testimony is and then repeats the question regarding Patterson's intent in sending the letter at least 7 times at D Ex 1, p 453, l13-16; p 453 lines18-19; p 435, line21; p 454 line 2; p 454 l 4-5; 454 line 25- p 455 line 1; p 455 line 3. Patterson consistently responded that the question has already been answered. Notably, defendant WWE offered no evidence that it had ever registered "World Wrestling Superstars".

When asked what was his basis for saying the logo for WWF has been terminated in favor of the WWF "World Wildlife Fund", Patterson answered, "The registration was canceled." P 455, lines 10-17. Then Krasik starts making deliberately false misrepresentations to Patterson in the form of non-questions and very complex leading questions with no evidentiary basis attempting to induce Patterson to give a different answer.[1] Patterson stood by his answer that the registration for WWF had been canceled.. See P Exhibit A, from the US Patent and Trademark Office stating that the registration for the mark WWF had been canceled on July 29, 1996. At this point Krasic accused plaintiff of lying under oath, made misrepresentations to Patterson that

---

[1] It was obvious that Krasik knew about the cancellation of the WWF SUPERSTARS mark. When Patterson answers that the case was filed with the U.S. Patent and Trademark office and that WWF SUPERSTARS was cancelled, defendant's counsel moved to strike as if somehow his motion to strike would keep the cancellation out of evidence. D Ex 1, p 423 lines 13-19. The motion to strike indicates Krasik had personal knowledge of the mark's cancellation since he did not want to learn more about the decision of the Patent and Trademark to cancel the mark..

3

the WWF mark had not been cancelled, and mocked Patterson for not being a trademark lawyer. Krasik tried to confuse Patterson by asking whether the WWF trademark or the WWF logo had been canceled. D Ex 1, p 457 lines 2-4. Krasik made no effort to explain the difference between his use of the terms WWF trademark and WWF logo, despite the fact that "logo" is defined as "a graphic symbol or representation of a company name, trademark, abbreviation, etc often uniquely designed for ready recognition." P Ex B Websters Dictionary. The definition of "logo" clearly encompasses the letters "WWF" which were cancelled by the Patent and Trademark Office. Krasik's question did not make sense when one takes the dictionary definition of "logo" into account. Yet Krasik accuses Patterson of lying under oath. Krasik's baseless and deliberately false accusations were abusive and insulting to Patterson. D Ex 1, p 455 lines 24-25. Krasik's outrageous and unprofessional accusations and conduct made Patterson threaten to leave the deposition, but Patterson did not leave. Although the time grew short, Krasik continued to rant and rave along this line of questioning through D Ex1, page 460 line 20 in an unsuccessful attempt to obtain a different answer to his question from Patterson. This waste of time by Krasik indicates that defendants did not need more deposition time. Moreover, in the face of this gross abuse by defendants' counsel, Patterson was not about to be subjected to this kind of deposition abuse for additional days on end without court guidance regarding how Krasik should conduct himself and the establishment of some time limits to Krasik's unprofessional abuse.

Immediately following Krasik's unprofessional barrage of insults and baseless criminal accusations against Patterson, Krasik then asked questions about why Mr. McMahon's company lied. Patterson objected to answering at which time Boutwell requested the opportunity to confer with his client. Krasik refused to allow consultation time with counsel, obviously preferring to

4

bring this matter to the court rather than having it resolved by a conference with counsel. D Ex 1, page 461, lines 17-22. Krasik basically waived his right to bring this issue to the court's attention by preventing an attempt for this issue to be resolved through counsel. Discovery rules are clear that disputes must be vented through counsel before bringing them to the court.

Instead, Krasik immediately asked a different question. Krasik's unprofessional tactics began to frustrate Patterson. When Patterson was asked why McMahon's company had lied, Patterson stopped answering as a result of the deliberately false accusations of lying under oath by Krasik immediately before. For a lawyer to deliberately, knowingly and falsely accuse a lay witness of criminal behavior, and to deny that witness the opportunity to consult counsel in order to intimidate and petrify the witness is despicable conduct.

Because that question was not answered, Plaintiff encloses the proof positive basis for Patterson's claim of lies by the defendant WWE. Defendant's responses to interrogatories signed under penalties of perjury by Linda McMahon, state that Titan Sports, Inc. (WWE's predecessor) did not use SUPERSTARS. P. Exhibit C, Interrogatory answers 5 and 6 signed May 20, 1993. Contemporaneous with this sworn interrogatory response, defendant WWE claimed many different dates of first use of marks with the word SUPERSTARS in applications to the U.S. Patent and Trademark Office. See P Exhibit D, indicating a claim of first use of WWF SUPERSTARS on 19920418; P Exhibit E claiming a first use of WWF SUPERSTARS on 19901106; and P Ex F claiming a first use of SUPERSTARS OF WRESTLING on 19860905; P Ex G claiming a date of first use of WWF SUPERSTARS on 19910801; and P Ex H claiming a date of first use of WWF SUPERSTARS on 19910101. While Linda McMahon falsely claims no use of SUPERSTARS under penalties of perjury when it suits Titan's litigation tactic, Titan

5

invents five different first uses when applying for registered trademarks using the word SUPERSTARS.

Considering the lack of concern for false representations in the past, it should be no surprise that defendant WWE has no qualms making the misrepresentation to this court at D brief page 5 that, "it is undisputed that the WWE began doing business under "World Wrestling Federation" and "WWF" since at least in 1979". Moreover, defendant WWE caused documents to be filed with the State of Wisconsin during an investigation regarding WWE'S failure to pay Wisconsin business taxes prior to 1987, which indicate that defendant WWE did not begin its business until 1987. P Exhibit I. The misleading documentation furnished to the State of Wisconsin essentially stopped the tax investigation by the State of Wisconsin because the State had no investigatory staff and no authority to resolve factual issues. P Exhibit I is a composite of documents that demonstrate defendant WWE's misleading tactics using official documents with both the Wisconsin Secretary of State and the Delaware Secretary of State. When the issue was whether Titan Sports, Inc. had paid business taxes to the State of Wisconsin for the years prior to 1987, a document appears with the Wisconsin Secretary of State that the date of incorporation for Titan Sports, Inc was on July 28, 1987. This date was convincing to investigators for the State of Wisconsin who were determining whether Titan Sports, Inc had paid taxes for doing business in Wisconsin before 1987. Page 1 of Ex I shows a date of incorporation for the defendant of July 28, 1987. P Ex I, p 20-21. The memo dated May 26, 1989 by Alan Lee, Assistant Attorney General for the State of Wisconsin, refers to the date of defendant's incorporation of July 28, 1987 provided by the Delaware Secretary of State as the basis for dropping the investigation regarding defendant's failure to pay taxes in prior years. Id.

6

Krasik then goes on to ask questions regarding Exhibit 58 which Patterson authenticates. Patterson testifies that he did not send Ex 58 to anyone but WWE. The course of the testimony indicates that defendants submitted an incomplete document without the fax cover sheet while Krasik asked where the letter was sent. D Ex 1, page 463.

Just as Krasik had just spent considerable time asking to whom Exhibit 58 had been sent with an incomplete document, Krasik followed up by submitting an obviously incomplete Exhibit 59. Patterson was now wary of commenting on another incomplete document. Exhibit 59 apparently had an enclosure upon which Patterson based his statements in the letter which defendants failed to include or make available to Patterson. It was obvious to Patterson that defendants were using a tactic of submitting incomplete documents as Exhibits to induce erroneous answers. Patterson had a right to insist on the complete documents including the enclosures with Exhibit 59 regarding the latest status information regarding the registration, something defendants were unwilling to provide. This notwithstanding, Patterson did authenticate the letter with the caveat that the document was incomplete. What is clear is that Patterson attached the basis for his statements in the letter in Exhibit 59, and defendants sought to distort the record by omitting Patterson's basis for his statements in Ex 59. It is defendants that chose not to present a complete Exhibit 59. Patterson chose not to make comments on the incomplete exhibit because the attachments would have refreshed Patterson's recollection as to his basis for making the statements in the letter.

## DEFENDANTS' UNSUBSTANTIATED COMMENTS

Defendants have made a number of untrue, unsubstantiated statements to the court in the first five pages which plaintiff will now address. Defendants argue that Patterson cannot be

7

believed because he did not file tax returns for 20 years. Defendants ignore that Patterson did file tax returns when he was required to do so by law. Defendants have not presented any evidence that Patterson owed tax in years no returns were filed. The law does not require tax returns to be filed when income tax is not due. Where does Patterson receive his money? He looked after foster children for many years and the payments from the State of Wisconsin helped defray the children's housing and living expenses. Since 1978 he has cared for his disabled brother who receives disability income and some of this money goes to defray the expenses of keeping his brother at the Patterson home. Patterson's office is out of his home which in turn generates some business deductions. In summary, Patterson just manages to get by while looking after and providing shelter for family members who provide some monetary assistance. He has owed no tax for the years in which he filed no tax returns.

## PATTERSON HAD PREVIOUSLY PRODUCED ALL DOCUMENTS RELATING TO THE 1990 LITIGATION

On the one hand defendants claim that Patterson only produced about 158 additional documents when in fact defendants' Exhibits to the deposition demonstrate that the defendant had the documents relating to the 1990 litigation at the time of the deposition. Moreover, Patterson produced video tapes of his use of WORLD WRESTLING ASSOCIATION and WWA in 1992 and 1993. Patterson explicitly said in his response to defendants' request to produce that he was not producing documents previously produced to the defendant. Documents previously produced in prior litigation between the parties were not re-produced by either side. The Exhibits used in defendants' deposition of Mr. Patterson indicate that defendants already had all documents relating to the 1990 litigation and Patterson's successful cancellation petition before

8

the Patent and Trademark office in its possession.

## PATTERSON HAD PRODUCED EVIDENCE OF USE OF WWA FROM 1979 FORWARD AND DEFENDANTS IGNORED THEIR OPPORTUNITY TO LEARN OF SUCH EVIDENCE

Defendants' argument that Patterson has produced no evidence of trademark use of "World Wrestling Association" or "WWA" (D brief pr 5) is wholly inconsistent with its failed res judicata arguments where defendants argue plaintiff used such marks prior to the 1990 litigation, and thus could have raised the issue in the 1990 litigation. First, this point is irrelevant to the pending motion, but will be addressed, since defendants' statement is false. In making this misstatement, Defendants have ignored the Exhibits attached to the Complaint, Patterson's interrogatory responses detailing such use prior to 1993 which is attached as D Exhibit 17, noting in particular the answer to Interrogatory numbers 5, 6, and 7, together with the deposition testimony of Lavelle Nash, Jeff May, Harold Naboisek and Albert Patterson and the exhibits thereto which go into the use of World Wrestling Association and WWF prior to 1993. The exhibits to Jeff May's deposition were available to defendants during all depositions. In fact defendants questioned Patterson extensively about the WWA shows in Exhibit D 17.

Defendants are claiming that there is no evidence of use of WWA prior to 1993, and yet defendants failed to ask Jeff May a single question about dep Ex 10 (found at the end of the Jeff May deposition), which is a schedule of use of the WWA mark for the period 1979 through 2003 produced to defendants. Jeff May testified that he was a wrestling entertainer throughout the 1978-1998 period, and he has knowledge about the use of the WWA and WORLD WRESTLING ASSOCIATION marks. Nor was the schedule of WWA events in P Ex J, dep Ex 10 used to refresh the recollection of Harold Naboisek even though he has been the master of ceremonies for

9

Mr. Patterson's events from 1974 to date. Defendants cannot now claim there is no evidence of such prior use when they failed to ask questions of two entertainers at these events during the depositions regarding such prior use. Defendants should not be entitled to a bar of such evidence solely because defendants failed to ask questions of Jeff May and Naboisek regarding such use. See <u>Ex J</u>, Deposition transcript of Jeff May and all exhibits and <u>P Ex K</u>, Deposition transcript of Harold Naboisek.[2] Considering that both will testify to such use both in affidavits and at trial, Defendants' allegations of a lack of evidence regarding Patterson's claim of use of WWA and WORLD WRESTLING ASSOCIATION are without foundation.

It is undisputed that the Defendants had knowledge that Patterson was doing business as the World Wrestling Association. Defendant WWE knew that Patterson had purchased all the assets of his bankrupt corporation, the United Wrestling Association, in 1992. Secretary of State of Wisconsin files document that United Wrestling Association merged with the World Wrestling Association, Inc. in 1992 with the World Wrestling Association (Superstars of Wrestling), Inc being the surviving corporation. Defendant WWE signed a settlement agreement with the World Wrestling Association in 1992. Moreover, Plaintiff filed an application to register his mark S Star W SUPERSTARS OF WRESTLING on August 30, 1993 under the name Albert Patterson d/b/a WWA SUPERSTARS OF WRESTLING. This mark was registered on October 4, 1994. <u>P Exhibit L.</u>

## DEFENDANT WWE SIGNS DECLARATIONS UNDER OATH TO THE PATENT AND TRADEMARK OFFICE THAT IT DID NOT USE WWF IN 1979

Defendant WWE's claim at D Br p 5 that it first used the mark World Wrestling

---

[2] All of Plaintiff's exhibits to the depositions were introduced at the deposition of Harold Naboisek which occurred before the Jeff May deposition.

10

Federation and WWF in 1979 is denied not only by plaintiff but by each individual representing the WWE that swore to different first use date to the U.S. Patent and Trademark Office. Defendant WWE's representations under oath to the US Patent and Trademark office were that its first use of WORLD WRESTLING FEDERATION was 19830200 (P Ex M) and that the first use of WWF in commerce was 19971109. P Ex N.

## DEFENDANT WWE HAS BEEN ENJOINED FROM USING WWF

Defendant WWE reargues the fully briefed res judicata motion it previously lost. This court held that new facts occurring since the 1990 litigation make this litigation a different case based on many factors including, but not limited to, the WWF mark cancellations mentioned above and the fact that Defendant WWE has been enjoined from using WWF in an action with the World Wildlife Fund. P Exs Q and P.[3] In the wake of this injunction, defendant Titan Sports, Inc. changed its name to World Wrestling Federation Entertainment, Inc. on July 29, 1999. When defendant WWE realized this did not satisfy the injunction, defendant's name changed to World Wrestling Entertainment, Inc. on June 14, 2002. P. Ex Q .

What defendant WWE fails to tell the court is that it has been enjoined from using WWF and that it changed its name to delete "Federation". Patterson has common law rights "World Wrestling" through his use of "World Wrestling Association" and WWA, and Patterson is suing to preserve his common law rights to that mark.

Defendants then argue that this case contradicts the consent order in the prior1990 litigation. Defendants cite to uncontested facts in a Pre-trial order in the 1990 litigation signed

---

[3] P Ex P at page 4 (page 3 of Notice of Opposition) states, "In accordance with the decision of the U.K. Court, all use by the Applicant of WWF marks was to cease by November 10, 2002."

only by defendant's counsel, not plaintiff's counsel and not by Judge Curran. When parties cannot agree on so called undisputed facts, often pre-trial orders are submitted by each side. But regardless of whether the "so called" uncontested facts were actually agreed to at the time, they are not agreed to now. New facts substantially change the defendant WWE's arguments regarding its entitlement to the contested marks.

Since the conclusion of the 1990 litigation, Defendant WWE's mark WWF has been cancelled repeatedly by the US Patent and Trademark Office. Moreover, all variations of defendant's registration for WWF SUPERSTARS have been cancelled or deemed abandoned by the United States Patent and Trademark Office. See P Exs A, D, E, F, G, H, N, and R.

The reference to a letter by Essman to Patterson to the effect that WWE's use of WWF SUPERSTARS does not violate the Court order misses the point and totally ignores the decisions issued later by the Patent and Trademark Office to cancel defendant's WWF marks. No action was brought by Patterson alleging defendant's registration of WWF SUPERSTARS violated the consent order in the 1990 litigation. Rather, Patterson filed his cancellation petition with the Patent and Trademark Office based on his common law rights, not on any language in the consent order. P Ex R. Moreover, regardless of the advice Patterson received from Essman, Patterson is not bound by the advice it receives from one lawyer. Patterson was represented by Joseph Kromhlotz, Esq, in connection with his successful petition to cancel Titan's registration of WWF SUPERSTARS. P Ex R. That defendants place all their hopes on a 1994 letter by Patterson's former counsel, when a different lawyer for Patterson succeeded in cancelling Titan's WWF SUPERSTARS registration, demonstrates the weakness of defendants' position.

Defendants make no mention of the US Patent and Trademark Office's cancellation of

12

WWF SUPERSTARS based on Patterson's cancellation petition. Defendants wholly fail to mention the injunction in favor of the World Wildlife Fund effective since November 10, 2002 barring the WWE from using WWF. P Exs O and P. Defendants fail to mention that all variations of WWE's marks with WWF and WWF SUPERSTARS have all been abandoned or cancelled. P Exs A, D, E, F, G, H, N, and R. These significant omissions speak volumes about the defendants' approach to their representations to this Court.

Defendant WWE claims that Patterson has made ten years of misrepresentation to WWE's business partners. P Exs A, D, E, F, G, H, N, and R attached to this response demonstrate that no misrepresentations were made by Patterson and demonstrate that Patterson had a basis to notify individuals whom Patterson believed were using his marks.

## ATTORNEY CLIENT COMMUNICATIONS

Not until defendants' motion for sanctions did defendants claim that there were other attorney/client communications discussed at D brief page 14 and attached as D Exhibits 6 through 26 to the Defendants' Motion. These letters were not introduced as exhibits at Patterson's deposition. These documents cannot be a part of the record relating to Patterson's deposition, and Plaintiff objects to their inclusion as a part of defendants' motion. At the deposition defendants claimed that Patterson has waived all attorney/client communications wherever and whenever solely on the basis of the publication of a letter from Essman to Patterson. D Ex 1, dep Ex 50. Krasik said, "Our position is that privilege has been waived on all these issues." D Ex 1, P 416 lines 14-16.

Krasik's statements during the deposition established that Mr. Essman submitted his letter to Patterson to the Deputy Administrator of the Supreme Court of Wisconsin in connection with

13

grievance proceedings. D Ex 1, P 428 lines 6-13. Apparently, defendants obtained those public records. Based on Mr. Essman's publication of the letter to the Board without Patterson's consent when Essman no longer represented Patterson, defendants argue that Patterson has waived his attorney client privilege with respect to all attorney/client communications whenever and wherever made. In view of this position taken by defendants, Patterson's counsel had to object to any testimony that might in fact waive the privilege for Patterson's attorney client privilege, wherever and whenever made. Mr. Patterson has not waived the attorney client privilege relating to his communications with Mr. Essman and certainly has not waived any privilege with other counsel by that letter. Evidence obtained from a breach of another's privilege is not admissible. See United States v. Sindona, 636 F.2d 792 (2nd Cir 1980), cert denied, 451 U.S. 912 (1981) where information from a witnesses' Venezualian lawyer was offered in cross-examination of that witness. The information was held inadmissible.

> If information obtained as a result of a violation of that privilege were permitted to be used against the client on cross examination, it would destroy the attorney client privilege. A client could hardly confide in counsel if this result were sanctioned.

636 F.2d at 805. Based on that belief, Patterson was instructed not to answer questions regarding those communications.

The question was: "Were you advised by your counsel that WWF could call itself WWF Superstars?"

Mr. Boutwell: "I object. Unless you have any indiction that's been published to a third party. I instruct him not to answer what counsel has advised him."

Another question was, "Did your counsel advise you that WWF could call itself WWF SUPERSTARS at the time?" Boutwell restated his position that Patterson should not answer

14

the question regarding what counsel told him at the time the consent order was given. D Ex, 1, page 416, lines 14-21.

Defendants questions were not limited to what Essman told Patterson. The questions were with respect to what any lawyer told Mr. Patterson at the time of the consent order which was entered into on or about 1993. That's more than a year before the Essman letter. Moreover, the questions would reach the advice given to Patterson by Joseph Kromholtz who represented Patterson in his successful petition to cancel defendant WWE's registration of WWF SUPERSTARS. P. Ex R. That cancellation petition was filed about a year after the Essman letter.

WHEREFORE, Plaintiff prays that all of defendants' motions be denied and for such further relief that the court in its discretion may deem appropriate.

Charles Drake Boutwell, as attorney for Plaintiff

Charles Drake Boutwell
3075 Plum Island Drive
Northbrook, Ill 60062
847-272-2126

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 23, 2005, he caused the service of PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS OR IN THE ALTERNATIVE, MOTION TO COMPEL on Curtis Krasik and Julie R. Fernstermaker, KIRKPATRICK & LOCKHART LLP, Henry W. Oliver Building, 535 Smithfield Street, Pittsburgh, Pennsylvania 15222 and Shepard A. Davis, BURTON & DAVIS. LLP, 611 N. Broadway, Milwaukee, WI 53202 counsel for the Defendants World Wrestling Entertainment, Inc and Conopco, Inc. via mail.

By: 

Plaintiff's Attorney