IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALBERT PATTERSON d/b/a<br>WORLD WRESTLING ASSOCIATION,<br>SUPERSTARS OF WRESTLING, INC., | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| WORLD WRESTLING ENTERTAINMENT, | ) |
| INC. and GOOD HUMOR CORPORATION | ) |
| d/b/a Good Humor Breyer's Ice Cream | ) |
| | ) |
| Defendants. | ) |

'05   FEB 22   P2:02

SOFRON E. PILSKY
Civil Action No. 03-C-0374

## SECOND AMENDED ANSWER AND COUNTERCLAIMS

Defendants World Wrestling Entertainment, Inc. ("WWE") and Good

Humor Corporation now known as Breyers, Inc., d/b/a/ Good Humor ("Good Humor")

(collectively, the "Defendants") as their Second Amended Answer and Counterclaims in

this action state as follows:

## COUNT ONE

1.      The allegations set forth in paragraph 1 constitute conclusions of

law to which no response is required. To the extent a further response is deemed

necessary, those allegations are denied.

2.      The allegations in paragraph 2 constitute conclusions of law to

which no response is required. To the extent a further response is deemed necessary,

those allegations are denied.

3. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3. To the extent a further response is deemed necessary, those allegations are denied.

4. It is admitted only that WWE is a Delaware corporation that is registered to do business in Wisconsin, and that WWE's corporate name formerly was World Wrestling Federation Entertainment, Inc. and Titan Sports, Inc. The remaining allegations set forth in paragraph 4 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

5. The allegations set forth in paragraph 5 regarding Defendant Good Humor are denied. The remaining allegations set forth in paragraph 5 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

6. The allegations set forth in paragraph 6 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

7. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 7. To the extent a further response is deemed necessary, those allegations are denied.

8. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 8. To the extent a further response is deemed necessary, those allegations are denied.

2

9. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 9. To the extent a further response is deemed necessary, those allegations are denied.

10. Exhibit F to the Complaint is a document that speaks for itself, and thus no response is required. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 10.

11. The allegations set forth in paragraph 11 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

12. The allegations set forth in paragraph 12 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

13. Plaintiff's Exhibits A through E, Exhibits K through M and Exhibits J and N are documents that speak for themselves, and thus no response is required. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 13. To the extent a further response is deemed necessary, those allegations are denied.

14. The allegations set forth in paragraph 14 are denied.

15. The allegations set forth in paragraph 15 are denied.

16. The allegations set forth in paragraph 16 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

3

17.    The allegations set forth in paragraph 17 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

18.    It is admitted only that Registration Number 1819240 for "WWF SUPERSTARS" was cancelled. The remaining allegations set forth in paragraph 18 are denied.

19.    It is admitted only that Registration Number 1579498 for "WWF" was cancelled. The remaining allegations set forth in paragraph 19 are denied.

20.    It is admitted only that Registration Number 2131847 for "WWF" was cancelled. The remaining allegations set forth in paragraph 20 are denied.

21.    It is admitted only that Application Number 78126718 for "WWE" was abandoned. The remaining allegations set forth in paragraph 21 are denied.

22.    It is admitted only that WWE filed Application Number 78126913 for the mark "WWE." The remaining allegations set forth in paragraph 22 are denied.

23.    It is admitted only that WWE, formally known as Titan Sports, Inc., filed an application to register "WORLD WRESTLING FEDERATION," which was registered under Number 1317318. The remaining allegations set forth in paragraph 23 are denied.

24.    The allegations set forth in paragraph 24 are denied.

25.    The allegations set forth in paragraph 25 are denied.

4

## COUNT TWO

26. Defendants' foregoing responses are incorporated by reference and reasserted as though fully set forth at length.

27. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 27. To the extent a further response is deemed necessary, those allegations are denied.

28. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 28. To the extent a further response is deemed necessary, those allegations are denied.

29. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 29. To the extent a further response is deemed necessary, those allegations are denied.

30. The allegations set forth in paragraph 30 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

31. The allegations set forth in paragraph 31 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

32. The allegations set forth in paragraph 32 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

5

## COUNT THREE

33.     Defendants' foregoing responses are incorporated by reference and reasserted as though fully set forth at length.

34.     The allegations set forth in paragraph 34 are denied.

35.     The allegations set forth in paragraph 35 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

## COUNT FOUR

36.     Defendants' foregoing responses are incorporated by reference and reasserted as though fully set forth at length.

37.     Exhibits A through E and K through M are documents that speak for themselves, and thus no response is required. Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 37. To the extent a further response is deemed necessary, those allegations are denied.

38.     The allegations set forth in paragraph 38 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

39.     The allegations set forth in paragraph 39 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

6

40. The allegations set forth in paragraph 40 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

41. The allegations set forth in paragraph 41 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

## COUNT FIVE

42. Defendants' foregoing responses are incorporated by reference and reasserted as though fully set forth at length.

43. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 43. To the extent a further response is deemed necessary, those allegations are denied. Defendants specifically deny that Exhibit K is a copy of Plaintiff's alleged registration.

44. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations set forth in paragraph 44. To the extent a further response is deemed necessary, those allegations are denied.

45. The allegations set forth in paragraph 45 are denied.

46. The allegations set forth in paragraph 46 constitute conclusions of law to which no response is required. To the extent a further response is deemed necessary, those allegations are denied.

7

## PLAINTIFF'S PRAYER FOR RELIEF

Defendants deny each and every allegation set forth in the Plaintiff's prayer for relief and deny that Plaintiff is entitled to any of the relief requested.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because they fail to state a claim upon which relief can be granted.

## SECOND AFFIRMANTIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of res judicata.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of acquiescence.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to plaintiff's unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's abandonment of rights in the marks of which he alleges ownership in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by public policy.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's federal claims are barred, in whole or in part, because Plaintiff does not use his alleged marks in interstate commerce.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because there is no likelihood of confusion between Plaintiff's alleged marks and any alleged use by either Defendant.

9

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged marks are not legally protectible marks.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged marks are not inherently distinctive and/or have not gained secondary meaning.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged marks are generic names.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the fair use doctrine.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by fraud.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by consent.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged marks do not distinctively identify Plaintiff's alleged goods or services.

10

## NINETEENTH AFFIRMATIVE DEFENSE

Any alleged use by Defendants of Plaintiff's alleged marks constituted a non-trademark use of those terms.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because WWE has priority of use.

## COUNTERCLAIMS BY DEFENDANT WWE

### A. The Parties

1. WWE is a Delaware corporation having its principal place of business in Stamford, Connecticut. WWE is an integrated media and entertainment company principally engaged in the development, promotion and marketing of television programming, pay-per-view programming and live arena events, and the licensing and sale of branded consumer products featuring the WWE logo and the WORLD WRESTLING ENTERTAINNMENT brand.

2. Good Humor is a corporation doing business in Wisconsin whose proper name is Conopco, Inc. d/b/a Good Humor-Breyers Ice Cream. Good Humor is a licensee of WWE in the category of ice cream products.

3. Upon information and belief, Plaintiff Patterson is a resident of Milwaukee, Wisconsin and purports to be the owner of World Wrestling Association, Superstars of Wrestling, Inc. Upon information and belief, Patterson does not, and for some time has not, used the marks of which he claims ownership in the Complaint in commerce.

11

**B. This Court Previously Adjudicated An Action Between Patterson and WWE**

4. In October 1990, Patterson through his wholly-owned corporation United Wrestling Association, Inc. ("UWA"), brought an action against WWE, formerly known as Titan Sports, Inc. before Judge Curran (the "1990 Action")[1] asserting the same claims alleged in the current suit. Specifically, that action alleged claims for state and federal unfair competition and trademark infringement involving various of the same marks at issue here, including, *inter alia*, SUPERSTAR WRESTLING, SUPERSTARS OF WRESTLING and SUPERSTARS OF PRO WRESTLING. Complaint in the 1990 Action is referred to as "1990 Complaint."

5. The 1990 action was resolved by a Consent Order signed by Judge Curran on January 22, 1993. January 22, 1993 Order, was amended by December 7, 1993 Amended Judgment and is collectively referred to as, "1993 Consent Order."

6. The 1993 Consent Order enjoined WWE from using three specific marks, SUPERSTAR WRESTLING, SUPERSTARS OF WRESTLING and SUPERSTARS OF PRO WRESTLING, in connection with wrestling activities in the United States. *Id.* The 1993 Consent Order further provided, however, "This judgment does not preclude any party from using the term 'Superstars.'" *Id.*

7. Patterson was explicitly advised by his counsel, a specialist in intellectual property law, of WWE's unfettered right to use the terms "superstar" or "superstars" and the absence of legal basis to prevent that use. By letter dated October 18, 1994, Patterson's counsel wrote:

---

[1] Although Patterson technically was not the named plaintiff in the 1990 Action, Patterson has admitted in the current action that the nominal plaintiffs, UWA and later World Wrestling Association ("WWA"), at all times were wholly-owned and controlled by Patterson. 2003 Complaint at ¶ 9. UWA's trustee in bankruptcy also was substituted as a plaintiff to the 1990 Action in the course of those proceedings.

12

> the Court Order and the stipulated settlement allow both
> parties to use the word "SUPERSTARS" in conjunction
> with certain other words. Thus, the use of 'WWF
> SUPERSTARS' does not violate the Court Order. Nor
> would an attempt to register 'WWF SUPERSTARS' with
> the Trademark Office violate the Order."

Patterson's counsel went on to conclude, "it is our opinion that there is currently no
evidence of a violation of the Court Order by Titan and thus, there is no cause of action
or grounds for reopening this case or filing new motions relating to this case." *Id.* To the
contrary, Patterson's counsel noted "there is a considerable amount of evidence showing
that Titan has taken rather extensive steps to guarantee that it would comply with the
Order." *Id.*

8.     Directly contrary to his intellectual property counsel's legal advice,
Patterson has continued to harass WWE.

## C.     Following Entry Of The 1993 Consent Order, Patterson Filed Numerous Abusive and Baseless Motions In This Court

9.     Since entry of the 1993 Consent Order, Patterson has repeatedly
abused the judicial process by filing frivolous and harassing litigation. Just six months
following entry of the 1993 Consent Order, in or around November 1993, Patterson
moved for civil contempt claiming that WWE had somehow violated the 1993 Consent
Order. At a civil contempt hearing, Judge Curran found that there was no evidence
WWE had done anything to violate the 1993 Consent Order and denied Patterson's
motion.

10.     Undeterred, Patterson began filing new *pro se* motions with this
Court aimed at harassing and defaming WWE, including the following litany of frivolous
submissions:

> a)  Motion to Clarify Injunction filed December 14, 1994, which
>     appears to have attempted—contrary to his intellectual property

13

counsel's advice—to include the term "superstars" under the ambit of the 1993 Consent Order. That Motion was denied by Judge Curran the very next day on December 15, 1994.

b) Letter to Judge Curran filed December 20, 1994 purporting to offer "proof" that Patterson had complied with the Court's procedural requirement for his December 14, 1994 motion, which previously had been denied by Judge Curran on substantive grounds.

c) Letter to Judge Curran filed December 30, 1994 requesting the right to subpoena records from multiple different cable companies regarding alleged violations of the 1993 Consent Order, and requesting a meeting with Judge Curran "to clear the air." All relief requested in Patterson's December 30, 1994 letter was denied by Judge Curran on January 3, 1995.

d) Letter to Judge Curran filed February 18, 1995 requesting advice from the Court as to whether his counsel's direction was correct that Patterson "cannot interfere with, nor prevent Titan or any other parties from using the word "superstar" alone or in combination with other terms."

e) Letter to the Clerk of the U.S. District Court for the Eastern District of Wisconsin filed on May 16, 1996 asking this Court to hold WWE in contempt because of its use of the term "superstars" in different contexts.

f) Letter to the Clerk of the U.S. District Court for the Eastern District of Wisconsin dated June 24, 1996 entitled Brief and Support of Affidavit Verification of Albert Patterson sent to the PTO, filed May 16, 1996. This submission again contains disjointed and incoherent allegations against WWE and certain of its executives, without requesting any particular action from the Court.

g) Letter to the Clerk of the U.S. District Court for the Eastern District of Wisconsin filed on August 12, 1996 requesting the parties to the 1993 Consent Order be amended. Judge Curran denied that motion on August 16, 1996.

h) Letter to the Clerk of the U.S. District Court for the Eastern District of Wisconsin dated August 26, 1996 again complaining about the names identified in the 1993 Consent Order. Judge Curran denied Patterson's August 26 "motion" on August 30, 1996.

i) Motion filed February 14, 2001 attempting to modify the parties to the 1993 Consent Order. This Motion was denied by Judge Curran by Order dated February 21, 2001.

## D. Patterson Similarly Made Numerous Abusive, False and Baseless Filings To The TTAB

11. Concomitant to Patterson's abusive filings in this Court, Patterson submitted numerous frivolous *pro se* filings to the PTO based on his patently erroneous belief that the 1993 Consent Order prohibited WWE from using the terms "superstar" or "superstars."

12. WWE moved to dismiss Patterson's TTAB Petition "on the basis that the preclusive effect of a prior civil action [the 1990 Action] bars plaintiff from pursuing its petition."

13. Because Patterson's TTAB Petition was in direct violation of the 1993 Consent Order and "presented for the improper purpose of harassing" WWE, WWE also filed a Rule 11 motion for sanctions.

14. Upon considering the 1993 Consent Order in the context of Patterson's Petition to Cancel, on August 12, 1999, the TTAB granted WWE's Motion to Dismiss and dismissed Patterson's Petition to Cancel with prejudice. Among other things, the TTAB ruled, as a matter of law, there would be no likelihood of confusion between WWE's WWF SUPERSTARS mark and Patterson's alleged marks. The TTAB further recognized that this Court "has held each party entitled to use 'Superstars'" and thus, as a matter of law, Patterson could suffer no "real damage" from WWE's WWF SUPERSTARS mark. In addition, the TTAB granted WWE's Rule 11 motion as conceded because Patterson failed to contest the motion. Patterson's TTAB Petition, therefore, alternatively was dismissed as a sanction for Patterson's violation of Rule 11.

15

**E. Patterson Has Harassed WWE And It Business Partners Through A Barrage Of Threatening and Defamatory Letters**

15. At the same time that Patterson has harassed WWE through abuse of the judicial system, Patterson also has harassed WWE and its business partners through a barrage of letters disparaging WWE and its business practices and threatening yet additional legal action.

16. Over the last ten years, Patterson has sent WWE, its counsel, licensees and broadcast partners copies of threatening and often incoherent and incomprehensible letters (including numerous letters from Patterson to his various legal counsel) ranting about perceived violations of his legal rights. In fact, Patterson's harassment immediately following entry of the 1993 Consent Order was so abusive, in or around 1993 WWE commenced an action against Patterson in Milwaukee County Circuit Court for tortious interference with business relations. Based on Patterson's representation that he would stop writing to WWE's business partners, WWE voluntarily dismissed the suit without prejudice. The Notice of Motion to dismiss WWE's action against Patterson was filed October 6, 1993. Clearly, however, Patterson's harassment and penchant for defaming WWE did not end. Although by no means exhaustive, the following are letters WWE and its business partners have received from Patterson since that time:

> a) February 15, 1993 letter from Patterson to WWE's former counsel, Charles Graupner, demanding that WWE cease and desist from representing that it "owns" the term "Superstars."
>
> b) December 19, 1993 letter from Patterson to WWE's former counsel, Joseph Gemignani, complaining that WWE should not be able to register the mark, WWF SUPERSTARS and threatening "when are you going to wake up & smell the roses you are being taken to the cleaners just as so many others before you" and thus should "[f]ix it now or pay later."
>
> c) November 7, 1994 letter from Patterson to his counsel—also Patterson's counsel in the current action—Charles Drake Boutwell

16

("Boutwell"), and copied to WWE's former counsel, Joseph Gemignani, calling for an investigation into Titan's WWF SUPERSTARS registration.

d) November 18, 1994 letter from Patterson to WWE's former counsel, Charles Graupner, resending the February 15, 1993 letter with eleven pages of attachments including Patterson's legal bills and sections of various legal statutes.

e) November 29, 1994 letter from Patterson to WWE's former counsel, Joseph Gemignani, accusing WWE's former-counsel of misleading the court and threatening new legal action.

f) December 11, 1994 letter from Patterson to Boutwell, copied to WWE and its counsel, claiming the exclusive right to the term "Superstars" in connection with wrestling services and threatening additional legal action.

g) December 12, 1994 facsimile from Patterson to Boutwell, copied to, among others, WWE President, Linda McMahon and WWE's former counsel, Joseph Gemignani, attaching excerpts from the transcript of the 1993 civil contempt hearing.

h) January 10, 1995 letter from Patterson addressed to "To Whom It May Concern" and copied to WWE President, Linda McMahon, WWE's former counsel, Joseph Gemignani, and Boutwell and Gary Essmann threatening to file a lawsuit against Titan "and all other parties involved."

i) January 27, 1995 letter from Patterson to Bob Clark, Program/Operations Manager at KHTV Channel 39 in Houston, Texas threatening legal action over airing a program allegedly called "World Wrestling Superstars."

j) January 27, 1995 letter from Patterson to Bill LeMonds, General Manager of WDJT-TV58 in Milwaukee, Wisconsin copied to WWE and its counsel again threatening legal action over airing a program allegedly called "World Wrestling Superstars."

k) February 13, 1995 letter from Patterson to the Program Director of United Paramount Network threatening legal action.

l) July 21, 1995 letter from Patterson addressed to "To Whom It May Concern" and copied to WWE boasting about Patterson's interference with Titan's licensees and again threatening a lawsuit.

17

m) December 18, 1995 letter from Patterson to WWE and its former counsel, Joseph Gemignani, describing WWE's alleged uses of the term "Superstars."

n) January 1, 1996, a complaint was faxed to WWE and WWE's counsel. It appears that complaint was never filed.

o) January 3, 1996 fax from Patterson to WWE's counsel, Jerry McDevitt, consisting of Patterson's bills for trademark searches, state and federal registrations, and an advertisement.

p) February 26, 1996 letter from Patterson to Boutwell, copied to WWE's CEO, Linda McMahon, and to Ted Turner, among others, warning that "Ted Turner is to be the main focus for us."

q) November 1, 1997 letter to Patterson's attorney, Joseph Kromholz, copied to Boutwell, Global communications, J.D. Publishing, Channel 24, Channel 58, Warner Cable, Journal Sentinel, Alan Detri and WWE's counsel Franklin Molin accusing WWE of sending "false information to all parties involved with Titan Sports."

r) October 2, 1998 letter from Patterson to WWE Chairman, Vince McMahon, and copied to WWE licensees, Good Humor—a co-defendant in this action—and Jakks Pacific, Inc., threatening to seek an injunction against WWE claiming, "it is very clear that you and your attorneys have no respect for anything pertaining to World Wrestling injunctions."

s) February 25, 2001 letter from Patterson to Boutwell, and copied to WWE's in-house counsel, again complaining about the Consent Order in the 1990 Action. Mr. Patterson also accuses WWE's counsel, Franklin Molin, of filing false statements with the PTO.

t) April 30, 2001 letter from Patterson to Boutwell, regarding the TTAB Decision in 1999. Patterson requested clarification of the terms in the TTAB document and claimed Titan is taking advantage of the TTAB language. He also once again alluded to future litigation between the parties.

u) Letter from Patterson addressed to "To Whom It May Concern" and received by WWE on August 8, 2001 claiming that the only word Patterson can understand is "confusion." Patterson then goes on to erroneously claim that the Consent Order between the parties gave him all rights to the term "World Wrestling." The missive also incoherently rants about WWE Chairman, Vince McMahon incoherently claiming "[h]e has stolen from each and every person who bought a ticket for his program. He has raped every state of

funds and taxes that each state deserves." The letter concludes with Patterson accusing Mr. McMahon of raping him of his livelihood and making yet another threat of litigation.

v) August 16, 2001 letter from Patterson to Boutwell, accusing WWE Chairman and CEO, Vince and Linda McMahon, of giving false documentation in the 1990 Action, and requesting that Boutwell investigate the usage of WWF as a trademark and WWE's involvement with the World Wildlife Fund. The letter ends with a renewed threat to bring litigation against WWE.

w) August 24, 2001 letter from Patterson to Boutwell, and copied to WWE's counsel, Jerry McDevitt, claiming that WWE among various other parties are infringers of Patterson's marks and indicating that Patterson wants to take legal action against all parties.

x) September 2, 2001 letter from Patterson to Boutwell, and copied to WWE, discussing the results of Patterson's "investigation" regarding the WWF mark and requesting advice from Boutwell as to the legal rights to the WWF and WWFE marks. Patterson concludes the letter by complaining that he has had two heart attacks and that no one is paying attention to him.

y) December 28, 2001 letter from Patterson to WWE licensee, Good Humor claiming Good Humor "was duped" because WWE does not own the trademark rights it claims and requesting Good Humor to do business with his organization, WWA, "the proper company." The letter also states that "McMahon's company lied."

z) March 27, 2002 letter from Patterson to Boutwell as well as WWE and April Lueders from the United States Patent and Trademark Office, falsely stating that "Titan Sports, Inc. agreed not to use "WWF Superstars of Wrestling" ever again.

aa) March 28, 2002 letter from Patterson to Boutwell, as well as DirecTV, CWA Communication, Inc., Time Warner Cable, AOL-Time Warner, and AOL claiming that Patterson's trademarks have been violated and threatening to hold each of the recipients responsible for attorney's fees.

bb) April 3, 2002 letter from Patterson to Boutwell, WWE's former counsel, Charles Graupner, WWE and copied to Judge Curran accusing WWE's past and present counsel of submitting false information to various judicial bodies, and making the perceptive observation, "My responses from Patent and Trademark Office and

19

people, such as Judge Curran . . . etc., have been that I am nuts and my portrayal has been that I am a nuisance and a parasite."

cc) April 11, 2002 letter from Patterson to Boutwell, WWE's counsel, Franklin Molin, and WWE again accusing WWE's counsel of submitting false information to various judicial bodies.

dd) April 22, 2002 letter from Patterson to Boutwell, Franklin Molin, WWE, and DirecTV once more talking about false documents and stating, "Titan Sports Inc. and all of its associates are being held liable for all damages incurred."

ee) May 7, 2002 letter from Patterson to Boutwell, and copied to WWE's former counsel, Charles Graupner, its present counsel, Franklin Molin, and in-house counsel, Lauren Dienes-Middlen, warning that "it is now the time to set a court date..."

ff) May 15, 2002 letter from Patterson addressed to "To Whom It May Concern," which is particularly incoherent, curiously claiming that WWE's May 6, 2002 press release concerning its name change to World Wrestling Entertainment means that WWE is claiming rights in the word "entertainment" and accusing WWE Chairman, Vince McMahon, of participating in a conspiracy with another organization known as World Wrestling All-Stars.

gg) September 23, 2002 letter from Patterson to Boutwell, copied to WWE, falsely accusing WWE Chairman and CEO, Vince and Linda McMahon, of submitting false information to the New York Stock Exchange and the Secretary of State of Delaware and others.

ee) January 6, 2003 letter from Patterson to Acclaim Entertainment, Inc. and World Wide Fund for Nature, and copied to WWE and its counsel, claiming WWE has no rights to the WWF mark and that Patterson is being restrained by WWE stating, "[i]t is obvious that [WWE] does not have any regards to court orders nor does any of it [sic] attorneys."

17.     Patterson's harassment and defamation of WWE and its business partners is simply a shakedown in the hope that WWE will pay Patterson to go away. Patterson has already tried to sell his marks for profit to WWE on more than one occasion prior to the commencement of this lawsuit.

20

18.     On or about December 6, 1999, Patterson sent a letter to WWE's
counsel, Robert Yeager, offering to sell Patterson's intellectual property, "Superstars of
Wrestling, Superstar Wrestling and Superstars of Pro Wrestling." According to
Patterson, "Superstars" is also up for sale.

19.     On or about December 19, 1999, Patterson sent another letter to
WWE's counsel, Robert Yeager, and copied to WWE licensee, Jakks Pacific,
complaining that Jakks Pacific is using the term, "Superstars" and stating, "It is not
understood by me why Titan Sports Incorporated does not buy those interests ... It would
be beneficial to all parties involved..."

20.     WWE never bought any assets from Patterson.

## COUNT ONE—ABUSE OF PROCESS

21.     The allegations set forth in the preceding paragraphs are
incorporated herein by reference as if fully set forth at length.

22.     As described herein, Patterson has continually threatened and
harassed WWE and its business partners for the last decade.

23.     As further described herein, Patterson has offered to sell his
alleged trademarks to WWE, which WWE refused, after which he began making threats
to file a new lawsuit against WWE.

24.     After offering to sell his alleged trademarks to WWE and being
turned down, on or about April 29, 2003, Patterson filed this lawsuit against WWE for
allegedly infringing those same purported trademarks.

25.     Patterson has filed this lawsuit in an attempt to coerce WWE to
pay him money in respect of the purported trademarks WWE previously refused to buy.

21

26. Patterson has filed this lawsuit to further harass WWE despite being advised by his intellectual property counsel his claims are legally baseless.

27. By filing this lawsuit for the extra-judicial purposes of attempting to coerce WWE to pay him money in respect of the purported trademarks WWE previously refused to buy and further harassing WWE, Patterson has used the judicial process for an improper and unlawful purpose.

28. Patterson's commencement of this action constitutes abuse of process.

29. As a direct and proximate result of Patterson's abuse of process, WWE has been injured in its business, reputation and goodwill.

## COUNT TWO – UNFAIR COMPETION UNDER 15 U.S.C. § 1125(a)

30. The allegations set forth in the preceding paragraphs are incorporated herein by reference as if fully set forth at length.

31. As described herein, Patterson knowingly and with actual malice has communicated false and/or deceptive and misleading statements to the public and WWE's current and prospective business partners regarding WWE and its business practices.

32. As described herein, Patterson knowingly and with actual malice has communicated false and/or deceptive and misleading statements to WWE's current and prospective business partners with the intent to induce those entities to do business with Patterson instead of WWE.

22

33.     As described herein, Patterson's false and/or deceptive and misleading statements were made in the course of commercial advertising and promotion to current and prospective business partners of WWE.

34.     As described herein, Patterson's false and/or deceptive and misleading statements misrepresented the nature, quality and characteristics of WWE's goods, services and business activities.

35.     Patterson's false and/or deceptive and misleading statements actually deceived or had the tendency to deceive WWE's current and prospective business partners.

36.     As described herein, Patterson's false and/or deceptive and misleading statements constitute unfair competition and false description in violation of Section 43(a) of the Lanham Act.

37.     As a direct and proximate result of Patterson's unlawful conduct described herein, WWE has been injured in its business, reputation and goodwill.

## COUNT THREE – TORTIOUS INTERFERENCE

38.     The allegations set forth in the preceding paragraphs are incorporated herein by reference as if fully set forth at length.

39.     WWE has valid contractual relationships with various business partners including, *inter alia*, Good Humor-Breyers Ice Cream.

40.     As described herein, Patterson knowingly and with actual malice has communicated false and/or deceptive and misleading statements to WWE's business partners including, *inter alia*, Good Humor-Breyers Ice Cream, regarding WWE and its business practices.

23

41. As described herein, Patterson knowingly and with actual malice has communicated false and/or deceptive and misleading statements to WWE's business partners, including *inter alia,* Good Humor-Breyers Ice Cream, with the intent to induce those entities to terminate their business relations with WWE, and to do business with Patterson instead.

42. In communicating such false and/or deceptive and misleading statements to WWE's business partners, including *inter alia,* Good Humor-Breyers Ice Cream, Patterson acted with malicious purpose and/or dishonest, unfair or improper means to harm WWE.

43. As described herein, Patterson's false and/or deceptive and misleading statements to WWE's business partners, including *inter alia,* Good Humor-Breyers Ice Cream, constitutes tortious interference with contractual and/or business relations.

44. Patterson interfered with WWE's business partners and contractual relationships without justification or any privilege to interfere.

45. As a direct and proximate result of Patterson's improper and unlawful conduct, WWE has been injured in its business, reputation and goodwill.

## COUNT FOUR – TRADE LIBEL

46. The allegations set forth in the preceding paragraphs are incorporated herein by reference as if fully set forth at length.

47. As described herein, Patterson has disparaged WWE's products and services by knowingly and with actual malice communicating false and/or deceptive

24

and misleading statements to the public and WWE's current and prospective business partners regarding WWE and its business practices.

48. Specifically, Patterson has disparaged WWE's products and services by falsely and/or deceptively claiming as follows:

(a) In a August 2001 letter addressed to "To Whom it May Concern" and received by WWE and other third-parties that: (i) "as of December 7th 1993, the Eastern District of Wisconsin Federal Court issued an injunction in favor of World Wrestling Association and giving all rights in the term World Wrestling to my organization;" (ii) "This injunction gives the title(s) of World Wrestling exclusively to me;" and (iii) "Mr. McMahon has stolen from each and every person who bought a ticket for his program. He has raped every state of funds and taxes that each state deserves."

(b) In a December 28, 2001 letter to Good Humor's President that: (i) WWE misrepresented its trademark rights to Good Humor; (ii) Good Humor-Breyers Ice Cream "was duped" because WWE supposedly did not own the trademark rights it claimed; and (iii) "McMahon's company lied."

(c) In a March 27, 2002 letter to United States Patent and Trademark attorney April Lueders that "Titan Sports, Inc. agreed not to use "WWF Superstars of Wrestling" ever again."

(d) In an April 3, 2002 letter to Attorney Boutwell, WWE's former counsel, Charles Graupner, WWE and copied to Judge Curran that: (i) WWE and its counsel submitted false information to this Court in Case No. 90-C-991 and to the Patent and Trademark Office, cancellation No. 24,465; and (ii) WWE has "hindered [Patterson's] ability to register with Patent and Trademark Office, and [Patterson's] ability to license or sell my trademark service marks and copyrights."

25

(e) In a April 22, 2002 letter to DirecTV that: (i) "[b]y my research there isn't any such trademark as World Wrestling Federation(r) Superstars (r) by Patent and Trademark Office;" (ii) "[m]e the plaintiff in these cases was permitted to use World Wrestling Association…;" and (iii) "[i]t must be known at this time that Titan Sports Inc. and all of its associates are being held liable for all damages incurred."

(f) In a September 23, 2002 letter to Attorney Boutwell and copied to WWE and other third-parties that WWE Chairman and CEO "Vince and Linda McMahon, had Secretary of State Delaware prepare false documentation, that of ownership of a trademark the name used was World Wrestling Entertainment, Inc., the date on that was July 1987."

(g) In a January 6, 2003 letter to Acclaim Entertainment, Inc. that: (i) "Titan Sports, Inc. does not have any regards to court orders;" and (ii) Patterson is "being restrained by WWE and cannot get [his] registration."

49.     Patterson's false and/or deceptive and misleading statements were made and published to third parties.

50.     Patterson's false and/or deceptive and misleading statements were made with actual malice and/or wanton disregard for the truth to harm WWE.

51.     In connection with Patterson's false and/or deceptive and misleading statements described herein, Patterson have no privilege or justification or have abused the same.

52.     Patterson's false and/or deceptive and misleading statements have caused or have the propensity to (i) cause harm to WWE's reputation in the business community; (ii) deter third parties from associating or dealing with WWE; (iii) ascribe to

26

WWE conduct, character or a condition that would adversely affect WWE's fitness for the proper conduct of its business or trade.

53. As a direct and proximate result of Patterson's false and/or deceptive and misleading statements, WWE has suffered general and special damages to its business, reputation and goodwill.

## PRAYER FOR RELIEF

WHEREFORE, Defendant WWE respectfully requests that this Honorable Court award WWE the following relief:

(1) Compensatory damages;

(2) Punitive damages;

(3) An injunction enjoining Patterson from disparaging and/or communicating false and/or deceptive and misleading information to WWE's business current and prospective business partners;

(4) Attorneys' fees and costs; and

(5) Such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

27

Respectfully submitted,

Dated: February 22, 2005

By _____
Shepard A. Davis
BURTON & DAVIS, LLP
611 N. Broadway
Milwaukee, Wisconsin 53202
Telephone: (414) 224-8000
Fax: (414) 224-7511

Jerry S. McDevitt
Curtis B. Krasik
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Fax: (412) 355-6501

Attorneys for Defendants World
Wrestling Entertainment, Inc. and
Conopco, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that the Defendants' Second Amended Answer and Counterclaims was served this 22 day of February, 2005, by regular mail, upon the following:

Charles Drake Boutwell
3075 Plum Island Drive
Northbrook, IL 60062